UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAMRA CULTON,

        Plaintiff,                            Case No. 2:22-cv-12102

v.                                      Honorable Susan K. DeClercq
                                           United States District Judge

UNIFI AVIATION, LLC,

        Defendant.

_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT (ECF No. 42)**

    Tamra Culton worked for Unifi Aviation for over a decade before she was disciplined for the first time in August 2020. Within two weeks, one infraction turned into three—all of them for wearing face coverings that violated Unifi's uniform policy. Specifically, Culton wore a rainbow-striped covering and also a black one that read "Black Lives Matter" in large, white letters. Frustrated with being disciplined, Culton then posted videos from work complaining about the punishment. By the end of the month, she was terminated for violating both Unifi's uniform and social-media policies.

    Culton alleges that Unifi violated Title VII and Michigan's Elliot-Larsen Civil Rights Act (ELCRA) because it discriminated against her based on race and sex, retaliated against her, and fostered a hostile work environment. However, because

Culton has not provided enough evidence to create genuine issues of material fact as to these issues, and no reasonable jury could find in her favor on any of her claims, Unifi's motion for summary judgment will be granted.

## I.  BACKGROUND

Culton began working for Unifi Aviation (formerly Dal Global Services) in 2008. ECF Nos. 49-1 at PageID.808; 42-3 at PageID.564. For the last ten years, she worked as a customer-service agent, or "gate agent," on a contract with Delta Air Lines. ECF No. 42-3 at PageID.568–70. Before the events leading to her termination, Culton had no issues with Unifi. ECF No. 49-1 at PageID.849.

Both Unifi and Delta required employees to wear uniforms, and Unifi's uniform policy required that its employees follow the specific uniform policy of the contracted airline. ECF No. 42-4 at PageID.648. In 2020, in response to the COVID-19 pandemic, Delta instituted a mask requirement for its employees, mandating that "employees must wear a Delta-provided disposable or solid black mask or a plain, all-black cloth face covering." ECF No. 42-5 at PageID.653. Culton disputes that she was ever informed of Delta's mask policy. ECF No. 49-1 at PageID.815. According to a Unifi supervisor, the policy would have been communicated through a briefing with employees. ECF No. 42-7 at PageID.661–62.

On August 5, 2020, Culton wore a rainbow-striped face mask while working at a Delta gate. ECF No. 49-1 at PageID.820, 830. When two of her Unifi

supervisors, Robin Cauchi and Tamika Knox saw her, they approached her and told her she could not wear the mask. *Id.* at PageID.820. Culton testified that Cauchi specifically told her, "we don't support that." *Id.* Although Culton did not intend the mask to be symbolic of gay pride, *id.* at PageID.846, she "assumed [Cauchi] meant a gay mask" because rainbow colors are commonly associated with the LGBTQ community and "because [Cauchi said] it in a very derogatory manner," *id.* at PageID.820, 850. Specifically, Culton claims that Cauchi raised her lip, pointed at the mask, and used a derogatory tone. *Id.* Culton testified that she is unsure what Cauchi meant by the comment and never asked any follow-up questions. *Id.* at PageID.820–21. Cauchi denies ever making such a comment. ECF No. 42-9 at PageID.668.

When Cauchi and Knox told Culton to change into a compliant mask or go home, Culton chose to leave work. ECF No. 49-1 at PageID.822. Though she did not say anything at the time, Culton claims she cannot wear disposable masks because they cause her to break out. *Id.* Culton received a verbal warning for this incident. *Id.* at PageID.851. Before leaving work, Culton made a video about the interaction and posted it to a Facebook page for other gate agents. ECF Nos. 42-8 at PageID.663, 49-1 at PageID.831. A Delta sign was visible in the background of the video. ECF No. 49-1 at PageID.831.

On August 13, 2020, Culton wore a black face mask with the words "Black Lives Matter" across the front in white letters at the gate. ECF No. 49-1 at PageID.824–25. A supervisor, Robyn Banks, stopped Culton and told her she could not wear the mask. *Id.* at PageID.852. Culton later got called to the manager's office. *Id.* On her way to see her manager, Culton posted another video to the gate agents' Facebook page about the interaction. ECF No. 42-13 at PageID.682. Upon arrival, Cassandra Donald, Culton's performance manager and longtime friend, told her she could not wear the mask and needed to change. ECF No. 49-1 at PageID.825–27, 852. Culton testified that Donald told her the mask was "offensive," although she also testified that she was unsure whether Donald actually said the mask *was* offensive or if she said the mask *could be seen as* offensive. ECF No. 49-1 at PageID.826. Donald testified that she merely "wanted to make sure we were not offending or being offensive to any of our customers or Delta's customers" or "taking a stand on political issues." ECF No. 42-10 at PageID.672.

To ensure compliance, Donald pointed Culton to the employee handbook pertaining to "insulting or offensive gestures." *Id.*; ECF No. 49-1 at PageID.834. Culton interpreted this to mean Donald was insinuating that the mask was harassment or offensive. ECF No. 49-1 at PageID.834. When given the option to change into a conforming mask, Culton again opted to leave work instead. *Id.* at

- 4 -

PageID.826. Donald gave Culton a corrective action for the Black-Lives-Matter mask on August 19, 2020. ECF No. 42-11 at PageID.679.

Later on August 19, 2020, Culton was wearing the rainbow striped mask around her wrist when a supervisor approached her. *Id.* at PageID.827. She asked Culton, "didn't we tell you you couldn't wear that?" *Id.* Despite Culton telling her that she had mindlessly put it on her wrist on her way into work, management issued another corrective action for wearing an "unapproved face covering on her arm." *Id.*; ECF No. 42-12 at PageID.681.

On August 27, 2020, Donald sent a Recommendation for Termination of Employment, stating the following basis for termination:

> Tamra Culton has been noncompliant with DGS uniform policy wearing unprofessional and inappropriate mask/face covering. Tamra Culton went on Social Media and made a video making derogatory comments about the company and our customers while in uniform and on the clock
> . . .
> Tamra Culton has violated DGS handbook, especially the policy pertaining to social media. Therefore, I recommend that Tamra Culton employment [sic] be terminated.

ECF No. 42-17 at PageID.694.

Unifi also claims that management learned of a message Culton had sent after Delta's announcement that employees could wear a branded "Black Lives Matter" pin, in which Culton wrote, "But they sending me home. Bitch please!! I'm about to get they asses, they ain't ready." ECF No. 42-15 at PageID.687. Unifi perceived this message as a threat in violation of the employee handbook and highlighted that it

was attached to Donald's Recommendation for Termination. *See* ECF No. 42 at PageID.529. Culton, on the other hand, denies writing such a message or seeing it prior to her deposition, claiming it was not part of the paperwork she received at her termination. ECF No. 49-1 at PageID.854.

On April 13, 2021, Culton and her attorney submitted a Charge of Discrimination to the Equal Employment Opportunity Commission (EEOC). ECF Nos. 42-20 at PageID.750–52; 42-21 at PageID.753–57. The Charge, signed by Culton but drafted by an investigator from the EEOC, states "I believe I was discriminated against due to my race, African American, and my sexual orientation, and retaliated against for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended." ECF Nos. 42-20 at PageID.751; 48 at PageID.785.

On September 6, 2022, Culton filed a complaint in this Court, alleging violations of Title VII and ELCRA for sex and race discrimination and retaliation. ECF No. 1. Within her discrimination claims, she also alleged a hostile work environment. *Id.* She later amended her complaint to reflect Unifi's name change since her termination. ECF No. 12. On January 23, 2024, Unifi moved for summary judgment. ECF No. 42.

## II. STANDARD OF REVIEW

To prevail on summary judgment, movants must identify record evidence showing that there is no genuine dispute of material fact and that they are entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); FED. R. CIV. P. 56(a). If so, then the burden shifts to the nonmovant to identify specific facts that create "a genuine issue for trial," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted), which requires more than a mere "scintilla of evidence," *id.* at 251, and more than "metaphysical doubt," *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. All inferences must be reasonable, logical, and drawn in the nonmovant's favor to determine whether any party must prevail as a matter of law. *See id.* at 251–52.

In her response to the motion for summary judgment, Culton seems to ask this Court to apply an even higher standard of review, arguing that "[w]hen there is evidence an employee has suffered discrimination in the workplace, courts use great caution in granting summary judgment." ECF No 48 at PageID.785. Each case she cites in support of this argument, however, come from outside circuits, including two Eighth Circuit cases that have been explicitly abrogated since their publication. *See Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011). Rather, the

argument that discrimination cases should receive a different standard for review is "contrary to Supreme Court precedent." *Id.* As the Court wrote in *Reeves v. Sanderson Plumbing Prods., Inc.*, "trial courts should not 'treat discrimination differently from other ultimate questions of fact.'" 530 U.S. 133, 148 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 524 (1993)). Absent Supreme Court or Sixth Circuit interpretation to the contrary, this Court will apply the Rule 56 summary judgment standard and will not find a discrimination case exception to this standard.

## II.    ANALYSIS

### A. Hostile-Work-Environment Claims

Within each of Culton's discrimination claims, she alleges that she was subject to race and sex discrimination that created an "intimidating, hostile, and/or offensive work environment." ECF No. 12 at PageID.65–67. As a threshold matter, Unifi argues that Culton's hostile-work-environment claims are barred because she failed to include them in her charge to the EEOC. This Court agrees. Even if the claims were not barred, however, they would still fail as a matter of law. As such, they must be dismissed.

*Procedural bar.* An employee alleging a Title VII violation "must first file an administrative charge with the EEOC" and "cannot bring claims in a lawsuit that were not included in his EEOC charge." *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d

359, 361 (6th Cir. 2010). When an employee files a charge without counsel, "their *pro se* complaints are construed liberally, so that courts may also consider claims that are reasonably related to or grow out of the factual allegations in the EEOC charge." *Id.* at 362.

Culton concedes that her EEOC charge did not mention any claim of a hostile work environment. ECF No. 48 at PageID.787. Nonetheless, she argues that she is entitled to liberal construction because neither she nor her attorney drafted the EEOC charge, entitling her to the same treatment as a *pro se* filer. *Id.* Culton's argument, however, misconstrues the definition of *pro se*. Regardless of who drafted the charge, it is undisputed that Culton had counsel at the time of filing and that an employee of her attorney submitted the charge to the EEOC. ECF No. 42-21 at PageID.754. Because Culton did not "appear on [her] own behalf" before the EEOC, she is not entitled to the liberal construction given to *pro se* filers. *Zanecki v. Health Alliance Plan of Detroit*, 576 F. App'x 594, 595 (6th Cir. 1994). The firm representing Culton submitted the charge and thus had the opportunity to review it for any errors or omissions. ECF No. 42-20 at PageID.750–51. Accordingly, since Culton's EEOC charge as submitted by counsel did not include allegations of a hostile work environment, such a claim is thus barred before this Court and must be dismissed. *Younis*, 610 F.3d at 361.

*Merits.* Regardless of the procedural bar, no reasonable jury could find that Culton was subjected to an objectively abusive or hostile work environment, even when viewing the facts in the light most favorable to her.

For a claim of a racially hostile work environment, "a plaintiff must demonstrate that (1) she belonged to a protected group, (2) she was subject to unwelcome harassment, (3) the harassment was based on race, (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment, and (5) the defendant knew or should have known about the harassment and failed to act." *Williams v. CSX Transp. Co.*, 643 F.3d 502, 511 (6th Cir. 2011) (quoting *Moore v. KUKA Welding Sys. & Robot Corp.*, 171 F.3d 1073, 1078 (6th Cir. 1999)). For both race and sex, ELCRA claims are analyzed under the same substantive framework as Title VII claims, so the Court considers both of these together.[1]

Culton claims that she has established a *prima facie* case for a hostile work environment because (1) it is undisputed that "she is a gay, African-American

---

[1] *See Downey v. Charlevoix Cnty. Bd. of Rd. Comm'rs*, 576 N.W.2d 712, 716 (1998) ("In order to establish a prima facie case of hostile work environment, a plaintiff must prove: (1) the employee belonged to a protected group; (2) the employee was subjected to communication or conduct on the basis of the protected status; (3) the employee was subjected to unwelcome conduct or communication on the basis of the protected status; (4) the unwelcome conduct or communication was intended to, or in fact did, interfere substantially with the employee's employment or created an intimidating, hostile, or offensive work environment; and (5) respondeat superior.").

woman," (2) she was "subject to conduct based on her race and sex when [Unifi]'s conduct resulted in [Culton] being terminated," (3) and "[t]he unwelcome conduct did in fact interfere substantially with [her] employment as she was terminated." ECF No. 48 at PageID.788. However, the only "unwelcome conduct" she points to is that a Unifi employee told Culton "'we don't support that' while raising her lip and pointing at [Culton]'s rainbow striped face mask" and that a different Unifi employee told Culton "that her Black Lives Matter mask was considered harassment." *Id.* at PageID.789. Even if this Court were to find that these two isolated incidents were "unwelcome harassment" or "unwelcome communication or conduct" on the basis of a protected status, no reasonable jury could find that this evidence rises to the level of a hostile work environment.

As the Supreme Court has instructed, conduct must be severe, frequent, and pervasive to warrant a claim for hostile work environment:

> We directed courts to determine whether an environment is sufficiently hostile or abusive by "looking at all the circumstances," including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance" . . . . A recurring point in [our] opinions is that "simple teasing," offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the "terms and conditions of employment."

*Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–23, 82 (1998)).

The evidence shows that Culton's claims do not reach the high bar for a hostile work environment. Notably, the Sixth Circuit has found that even more severe and frequent harassment failed to survive summary judgment. *See Nathan v. Great Lakes Water Auth.*, 992 F.3d 557, 564–71 (6th Cir. 2021) (supervisors' and coworkers' derogatory comments about size of female employee's breasts, where the employee could point to five instances over a 15-month period, were merely "isolated incidents"); *Hunter v. Gen. Motors LLC*, 807 F. App'x 540, 545 (6th Cir. 2020) ("while [] comments about what a child between [Plaintiff] and a white male coworker might look like are totally inappropriate and offensive, they are not so serious under our precedents [to create a hostile work environment]"); *Artis v. Finishing Brands Holdings, Inc.*, 639 F. App'x 313, 324–25 (6th Cir. 2016) (finding no objectively hostile work environment where plaintiff presented evidence that one coworker made "a few" comments plaintiff believed to be racist, a noose was hung in the workplace, and there was racist graffiti in the bathroom).

These cases, which failed to survive summary judgment, all present more severe conduct than here. Culton was simply asked thrice not to wear out-of-uniform masks, and no explicit reference was ever made to her race, sex, or sexual orientation. Because Culton fails to point to any conduct by Unifi or its employees that is so pervasive, severe, and frequent as to create an objectively intolerable

- 12 -

workplace, no reasonable jury could find that she was subjected to a hostile work environment, and these claims must be dismissed.

## B. Count I: Race Discrimination Under Title VII

Unifi argues that Culton's race-discrimination claim under Title VII must be dismissed because she has failed provide enough evidence to establish the *prima facie* case under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). This Court agrees.

"[O]n a motion for summary judgment, a district court considers whether there is sufficient evidence to create a genuine dispute at each stage of the *McDonnell Douglas* inquiry." *Briggs v. Univ. Of Cincinnati*, 11 F.4th 498, 508 (6th Cir. 2021) (quoting *Risch v. Royal Oak Police Dep't*, 581 F.3d 383, 390–91 (6th Cir. 2009)) (alteration in original). If there is not, then summary judgment is appropriate. *Griffin v. Finkbeiner*, 689 F.3d 584, 593 (6th Cir. 2012) ("to survive summary judgment a plaintiff [must] produce enough evidence to support a prima facie case") (quoting *Blair v. Henry Filters, Inc.*, 505 F.3d 517 (6th Cir. 2007), *overruled on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009)).

To demonstrate a *prima facie* case of discrimination, the plaintiff must show that "(1) he or she was a member of a protected class; (2) he or she suffered an adverse employment action; (3) he or she was qualified for the position; (4) he or she was replaced by someone outside the protected class or was treated differently

- 13 -

than similarly-situated, non-protected employees." *Briggs*, 11 F.4th at 508 (quoting

*Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006)).

Unifi does not dispute the first two elements: that Culton is African American

and that she suffered an adverse employment action—namely, her termination.

However, Unifi argues that Culton has not produced enough evidence of the last two

elements: that she was qualified for the position and that she was treated differently

than similarly-situated, non-protected employees.

As to Culton's qualifications, the record evidence is indeed sparse. Culton

provides no affirmative proof of her qualifications, instead stating without support

that Unifi's "shifting reasons for termination establishes [she] was qualified." ECF

No. 48 at PageID.792. Alone, this assertion would be insufficient for purposes of the

*prima facie* case. However, Culton also testified that she had no prior issues in the

twelve years she worked for Unifi prior to the events leading to this case. ECF Nos.

48 at PageID.782; 49-1 at PageID.849. Viewing the evidence in the light most

favorable to Culton, this testimony, unrefuted by Unifi, creates a genuine issue of

fact as to whether she was qualified for her position.

Regardless, Culton fails to present evidence creating a genuine issue of

material fact as to the differential treatment element. Culton argues that she was

treated differently than similarly situated employees, but she fails to support this

with adequate evidence. She first claims that she knew of other employees wearing

- 14 -

"noncompliant" masks and believes supervisors were also aware. ECF No. 48 at PageID.792. She then adds that she also knew of employees violating the uniform policy by wearing red belts or a "veterans" hat. *Id.*

A closer look reveals that this evidence is not enough to sustain the claim. In her deposition, Culton was asked about the employees she remembers seeing with non-conforming masks at work. ECF No. 49-1 at PageID.817. At the time, she claimed she remembered "at least three" Black women who wore masks with writing on them. *Id.* As to these women, Culton testified that she did not know their names or sexualities, nor did she know whether any supervisor or manager ever saw them wearing the non-compliant masks, let alone approved of them. *Id.* at PageID.817–19. Culton never asked a supervisor or human resources why these other masks were allowed when hers were not. *Id.* Culton's only basis for her claim that the supervisors knew about the masks is that the number of employees had been "cut down" so there were fewer employees working at the time. *Id.* at PageID.817. Moreover, Culton identifying three Black women who violated the policy does not evince differential treatment under Title VII, as they share Culton's protected traits. On this evidence, especially absent any testimony that supervisors even knew of these alleged violations, no reasonable jury could find that Culton was treated differently from similarly-situated, non-protected employees.

As for the other allegations—that there were employees who wore nonconforming belts or hats—Culton has also failed to create a genuine issue of material fact as to disparate treatment. First, Culton testified that she remembered employees wearing red belts despite the uniform code requiring black or navy ones. *Id.* at PageID.813. But when asked for more specifics, Culton had nothing further to offer: she did not know who was wearing the belt, nor when the person did so, nor the person's race and sex. *Id.* She also could not say whether a supervisor ever approved this uniform violation, even testifying that "maybe they just didn't see it." *Id.* She did not point to any other evidence that these violations ever occurred or that any supervisors saw them. Once again, this testimony does not establish that Culton was treated differently than similarly-situated, non-protected employees.

Next, Culton alleges that another gate agent who she worked with from 2017 to 2020 work a navy-blue hat with the word "veteran" on it every day without consequence. *Id.* at PageID.813–14. While she identified this employee as male, she failed to identify his race. *Id.* She further testified that she never saw a supervisor or manager approve him to wear the hat or acknowledge that he was wearing the hat and conclude it was okay. *Id.* Because Culton failed to establish that the man was of a different race, or that he actually received different treatment by the supervisors, this also fails to create a genuine issue of material fact as to disparate treatment.

At bottom, Culton has failed to produce enough evidence to establish a *prima facie* case of race discrimination, so her claim must be dismissed. It is therefore unnecessary to consider the rest of the *McDonnell Douglas* burden-shifting analysis. 411 U.S. at 802 ("The complainant in a Title VII [case] must carry the initial burden under the statute of establishing a prima facie case of racial discrimination" before the burden shifts to the employer.).

## C. Count II: Race Discrimination Under ELCRA

Courts analyze ELCRA discrimination claims under the same framework as Title VII claims. *Wingo v. Mich. Bell Tel. Co.*, 815 F. App'x 43, 47–48 (6th Cir. 2020). For the same reasons that Culton failed to make out a *prima facie* race discrimination case under Title VII, Culton fails to make a *prima facie* case of race discrimination under ELCRA. *See* discussion *supra*, Part II.B. Accordingly, Count II must be dismissed.

## D. Count III: Sex Discrimination Under ELCRA

ELCRA sex discrimination claims also require plaintiffs to establish the *prima facie* case. *Wingo*, 815 F. App'x at 47. Therefore, the same analysis as under Counts I and II applies here. One factual difference remains, however, which merits additional consideration.

Culton's testimony that she remembered a man wearing a nonconforming hat did not support her race-discrimination claim because she never identified the man's

race. Part III.B., *supra*. However, because she identified this employee as male, this Court will consider whether this testimony is enough to create a genuine issue of material fact as to differential treatment based on sex.

Even viewing the evidence in the light most favorable to her, Culton's memory of a male employee wearing a "veterans" hat to work is insufficient to show disparate treatment. The general claim that supervisors "saw him every day" does not go far enough to establish such a violation was known and ignored. ECF No. 49-1 at PageID.814. This type of allegation may have been enough at the motion to dismiss stage, but now, after discovery has been conducted, the only evidence that Culton can proffer is her vague recollection of an unnamed fellow employee and her unsubstantiated assumption that Unifi was "unbothered" by his conduct. ECF No. 48 at PageID.792.

Culton never spoke to a supervisor, manager, or anyone in human resources about the man's hat. ECF No. 49-1 at PageID.813–14. She presents no evidence that he did not receive any sort of warning or other consequences for wearing a non-uniform hat. *See generally* ECF No. 49. Further, she provides no record that any of the supervisors testified that they were aware of this man's alleged uniform violations. *See generally id.* In truth, she has no evidence that Unifi knew about and permitted the man to wear a non-uniform hat, or even that *anyone* else ever saw such a violation. On its own, Culton's testimony that she believes a man violated the hat

policy and continued to work, without actual proof that his supervisors even knew of the alleged violation, is not enough to create a genuine issue of material fact as to disparate treatment.

Because Culton failed to meet her initial burden of presenting evidence that she was treated differently from similarly situated employees outside of her protected class, she has not made a *prima facie* case of sex discrimination. Therefore, Count III must be dismissed.

### E. Count IV: Retaliation Under Title VII

Unifi argues that Culton's retaliation claim fails as a matter of law because she has failed to produce any evidence that she was engaged in "protected activity" as defined by Title VII. This Court agrees. Because Culton fails to raise a genuine issue of material fact as to this element of her claim, Count IV must be dismissed.

For retaliation claims under Title VII, a plaintiff must demonstrate "1) that she engaged in protected activity, 2) that the defendant was aware of the protected activity, 3) that the defendant took an action that was materially adverse to the plaintiff, and 4) that there is a causal connection between the plaintiff's protected activity and the defendant's adverse action." *Jackson v. Genesee Cnty. Rd. Comm'n.*, 999 F.3d 333, 343–44 (6th Cir. 2021). As defined by the statute, an employee engages in protected activity where they have "opposed any practice by the employer made lawful under Title VII" or "participated in any manner in an investigation

under Title VII." *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 578 (6th Cir. 2000) (cleaned up).

In the Amended Complaint, Culton alleges that she "engaged in protected activity, including, but not limited to, when she informed management of the discriminatory harassment against her." ECF No. 12 at PageID.68. Reporting harassment would qualify as protected activity under Title VII. *Johnson*, 215 F.3d at 579 (noting that the EEOC has identified a number of examples of "opposing" conduct, including complaining to management about allegedly unlawful practices). However, in her response, Culton then backs away from that claim, presenting no evidence that she reported any harassment to management and arguing instead that "plaintiff engaged in protected behavior when wearing garments in support of the African American and LGBTQ community."[2] ECF No. 48 at PageID.793. Rather than sounding in Title VII, Culton's argument sounds in the First Amendment, which is neither the legal standard at issue in this claim, nor applicable to a private employer like Unifi. *See, e.g.*, *Ciraci v. J.M. Smucker Co.*, 62 F.4th 278, 280–82 (6th

---

[2] Culton presents no support for her claim that wearing garments in support of the African American and LGBTQ communities is "protected behavior" under Title VII. Instead, she attaches a news article summarizing an NLRB decision—not even providing the decision itself—which determined that a "BLM apron marking was a 'concerted' activity covered under the National Labor Relations Act." ECF No. 49-7 at PageID.1050. Culton's claim, however, is not that she was engaged in a concerted activity under the NLRA but that she was engaged in a protected activity under Title VII. This exhibit therefore fails to persuade this Court of her position.

Cir. 2023). Because Culton fails to raise a genuine issue of material fact as to whether she was engaged in protective activity under Title VII, summary judgment is appropriate on her retaliation claim. As such, Count IV must be dismissed.

### IV. CONCLUSION

Accordingly, it is **ORDERED** that Defendant's Motion for Summary Judgment, ECF No. 42, is **GRANTED.**

Further, it is **ORDERED** that the Amended Complaint, ECF No. 12, is **DISMISSED WITH PREJUDICE**.

**This is a final order and closes the above-captioned case.**

*/s/Susan K. DeClercq*
SUSAN K. DeCLERCQ
United States District Judge

Dated: 9/27/2024