# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| TAMRA CULTON, | )  )  Case No. 2:22-cv-12102-SKD-DRG |
| PLAINTIFF, | )  ) |
| | )  Hon. Susan K. DeClercq |
| VS. | )  ) |
| UNIFI AVIATION, LLC. | )  ) |
| DEFENDANT. | )  )  )  )  )  )  ) |

## **PLAINTIFF'S MOTION FOR RECONSIDERATION**

COMES NOW, Plaintiff, TAMRA CULTON, by and through her counsel, Carla D. Aikens, P.LC., and requests that this Honorable Court grant her Motion for Reconsideration Regarding Defendant's Motion for Summary Judgment for all the reasons stated in the attached Brief in Support.

WHEREFORE, Plaintiff humbly asks this Court to reconsider its order granting Defendant's Motion for Summary Judgment.

Dated: October 25, 2024

                                               Respectfully Submitted,

                                               /s/ *Rejanae M. Thurman*
                                               Rejanae M. Thurman, (P86701)
                                               Carla D. Aikens, P.L.C.
                                               *Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| TAMRA CULTON, | ) |
| | ) Case No. 2:22-cv-12102-SFC-DRG |
| PLAINTIFF, | ) |
| | ) Hon. Susan K. DeClercq |
| VS. | ) |
| | ) |
| UNIFI AVIATION, LLC. | ) |
| | ) |
| DEFENDANT. | ) |

**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR RECONSIDERATION OF [ECF NO. 54] ORDER GRANTING DEFENDANT'S MOTION TO FOR SUMMARY JUDGMENT**

1

**TABLE OF CONTENTS**

| | |
|---|---:|
| TABLE OF CONTENTS | 2 |
| QUESTION PRESENTED | 3 |
| TABLE OF AUTHORITIES | 4 |
| INTRODUCTION | 5 |
| STANDARD OF REVIEW | 5 |
| ARGUMENT | 6 |
| CONCLUSION | 18 |

## QUESTION PRESENTED

1. **Should this Court grant Plaintiff's Motion for Reconsideration and allow Plaintiff's claims to proceed to trial with this Honorable Court, where Plaintiff has demonstrated that there are genuine issues of material fact?**

    Plaintiff answers "Yes."

    Defendant would answer "No."

# **TABLE OF AUTHORITIES**

**Cases**

*Betts v. Costco Wholesale Corp.*, 558 F.3d 461 (6th Cir. 2009) ...................................................... 6
*Bobo v. United Parcel Service, Inc.*, 665 F.3d 741 (6th Cir. 2012) ................................................ 13
*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ................................................................................ 7
*Connecticut v. Teal*, 457 U.S. 440, 455 (1982) ............................................................................. 12
*Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271, 276-78 (2009) ........... 17
*Downey v. Charlevoix Co., Bd of Rd Comm'rs*, 227 Mich App 621, 629 (1998) ....................... 13
*Downey v. Charlevoix Co., Bd of Rd Comm'rs*, 227 Mich. App. 621 (1998) ............................... 8
*Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998); ...................... 13
*Faragher v. City of Boca Raton*: 524 U.S. 775 (1998) ................................................................... 8
*Fleck v. Titan Tire Corp.*, 177 F. Supp.2d 605 (E.D. Mich. 2001) ................................................. 6
*Graham v. Cty. of Washtenaw*, 358 F.3d 377 (6th Cir. 2004) ........................................................ 6
*Inge v. Rock Fin. Corp.*, 281 F.3d 613 (6th Cir. 2002) .................................................................. 6
*Intera Corp. v. Henderson*, 428 F.3d 605 (6th Cir. 2005) ............................................................. 6
*Jordan v City of Cleveland*, 464 F3d 584 (6th Cir. 2006) ............................................................. 9
*Laster v. City of Kalamazoo*, 746 F.3d 714, 729-30 (6th Cir. 2014) ........................................... 16
*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ............................ 7
*McDonnell Douglas v. Green*, 411 U.S. 792 (1972) .................................................................... 11
*McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797 (6th Cir. 2000) .................................................... 7
*Meagher v. Wayne State Univ.*, 565 N.W.2d401, 410 (Mich. 1997) ........................................... 13
*Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 505 (6th Cir. 2014) .......................... 17
*National Railroad Passenger Corporation v. Morgan*: 536 U.S. 101 (2002) ............................... 8
*Ondricko v. MGM Grand Detroit, LLC*, No. 10-2133 (6th Cir. 2012) ........................................ 13
*Radtke v. Everett*, 442 Mich. 368 (1993) ....................................................................................... 8
*Scotts Co. v. Central Garden & Pet Co.*, 403 F.3d 781 (6th Cir. 2005) ........................................ 6
*Smith v Rock-Tenn Services, Inc*, 813 F3d 298 (6th Cir. 2016) .................................................... 9
*Smith v. Hudson*, 600 F.2d 60 (6th Cir. 1979) ............................................................................... 6
*State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433 (6th Cir. 2005) ..................................... 7
*Teamsters v. United States*, 431 U. S. 324 (1977) ...................................................................... 11
*Texas Dept. Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981) ............................................. 18
*USPS Board of Governors v. Aikens*, 460 U.S. 711 (1983) ........................................................ 11
*Velazquez-Ortiz v. Vilsack*, 657 F.3d 64, 72 (1st Cir. 2011) ....................................................... 17
*Wright v. Murray Guard, Inc.*, 455 F.3d 702 (6th Cir. 2006) ...................................................... 13

**Rules**

Federal Rule of Civil Procedure 59(e) ............................................................................................ 5
Mich. L R 7.1(h ................................................................................................................................ 5

## INTRODUCTION

This Honorable Court granted Defendant's Motion for Summary Judgment on September 27, 2024 (ECF No. 54). For the reasons stated below, Plaintiff respectfully requests that the Court grant her Motion for Reconsideration and allow this case to move forward to trial.

## STANDARD OF REVIEW

Motions for reconsideration may be brought pursuant to Federal Rule of Civil Procedure 59(e) ad E. D. Mich. L R 7.1(h). A motion to reconsider may be treated as a motion to alter or amend a judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 617-18 (6th Cir. 2002) *Smith v. Hudson*, 600 F.2d 60, 62 (6 Cir. 1979). "The grant or denial of a Rule 59(e) the motion is within the informed discretion of the district court, reversible only for abuse." *Betts v. Costco Wholesale Corp.*, 558 F.3d 461, 467 (6th Cir. 2009) (quoting *Scotts Co. v. Central Garden & Pet Co.*, 403 F.3d 781, 788 (6th Cir. 2005). A Rule 59(e) motion may be well-taken if there is (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) to prevent manifest injustice. *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005).

A party seeking reconsideration "must not only demonstrate a palpable defect by which the court and the parties have been misled but also show that correcting the defect will result in a different disposition of the case." *Graham v. Cty. of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004). A "palpable defect" is one which is "obvious, clear, unmistakable, manifest, or plain." *Fleck v. Titan Tire Corp.*, 177 F. Supp.2d 605, 624 (E.D. Mich. 2001). Plaintiff respectfully requests that this court reconsider its Order granting Defendant's Motion for Summary Judgment.

**ARGUMENT**

Plaintiff incorporates by reference all of the arguments set forth in her Response to Defendant's Motion for Summary Judgment (ECF No. 47), and thus will not repeat those arguments here.

## A. SUMMARY JUDGMENT IS IMPROPER IN THIS CASE AS THERE ARE GENUINE ISSUES OF MATERIAL FACT

The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)).  Furthermore, the evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue then shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  To fulfill this burden, the non-moving party only needs to demonstrate the minimal standard that a jury could ostensibly find in his favor. *Anderson*, 477 U.S. at 248; *McLean v. 988011 Ontario, Ltd*., 224 F.3d 797, 800 (6th Cir. 2000).

Viewing all the evidence in the light most favorable to Plaintiff. There is sufficient evidence to establish a genuine issue of material fact of Plaintiff's claims. Therefore, Plaintiff respectfully requests that for the reasons set forth below, this Court grant Plaintiff's Motion for Reconsideration, allowing her case to proceed.

### B. PLAINTIFF ESTABLISHED A PRIMA FACIE CASE OF HOSTILE WORKPLACE ENVIRONMENT

To establish a prima facie case of hostile environment, a plaintiff must demonstrate that

1. the employee belonged to a protected group,
2. the employee was subjected to communication or conduct on the basis of the protected status,
3. the employee was subjected to unwelcome conduct or communication on the basis of the protected status,
4. the unwelcome conduct was intended to or in fact did substantially interfere with the employee's employment or created an intimidating, hostile, or offensive work environment;
5. and respondeat superior.

*Downey v. Charlevoix Co., Bd of Rd Comm'rs*, 227 Mich. App. 621, 629 (1998). Plaintiff has established a prima facie case of a hostile work environment, as Defendant's discriminatory behavior and demeaning comments interfered with her employment. The test for a hostile work environment is whether a reasonable person, considering the totality of circumstances, would perceive the conduct as creating an intimidating, hostile, or offensive work environment that interferes with their employment. *Radtke v. Everett*, 442 Mich. 368, 394 (1993). Under the standard set forth in *National Railroad Passenger Corporation v. Morgan*: 536 U.S. 101 (2002) and *Faragher v. City of Boca Raton*: 524 U.S. 775 (1998), the determination of whether harassment is severe or pervasive requires examining all of the circumstances, including the frequency and severity of the conduct.

The court erred in dismissing Plaintiff's hostile work environment claim by failing to consider the totality of the circumstances and the impact of Defendant's conduct from the perspective of a reasonable person in her position. As noted above, Title VII requires that courts assess whether conduct is "severe or pervasive" enough to create an environment that a reasonable person would find hostile or abusive, taking into account the context and the

circumstances from the plaintiff's perspective. Further, the Sixth Circuit has made clear that "whether harassing conduct is sufficiently severe or pervasive to establish a hostile work environment under federal law is 'quintessentially a question of fact.'" *Jordan v City of Cleveland*, 464 F3d 584, 597 (6th Cir 2006); *Smith v Rock-Tenn Services, Inc*, 813 F3d 298, 310 (6th Cir 2016).

Here, the court did not fully account for the heightened social tensions of 2020 or the impact of Defendant's response to Plaintiff's support for Black Lives Matter – and its belief that her rainbow mask was supporting LGBTQ+ causes just because of her sexual orientation – caused on her identity as a Black, gay woman. Hostility toward Plaintiff began when she wore a rainbow mask and Black Lives Matter mask, which are directly associated with her protected characteristics of race, sex, and sexual orientation. Defendant's shunning, admonition, suspension, and eventual termination of Plaintiff, just because Plaintiff appeared to be displaying support for these communities, was not only isolating but made Plaintiff believe that Defendant was attempting to silence her identity and beliefs, going so far as to label her expressions as "harassing." This kind of response exacerbated the hostile environment by subjecting Plaintiff to negative scrutiny based upon her support for a cause that affects her community. The fact that Defendant interpreted Plaintiff's rainbow mask as an LGBTQ+ symbol – and then discriminated against her because of it – only underscores that its response was illegally discriminatory.

Moreover, the fact that Plaintiff's experiences took place in 2020 should have also been taken into account, a time marked by heightened awareness of police brutality and racial injustice, which was the reason Plaintiff was even heightened the stakes of openly supporting Black Lives Matter, and appearing to support LGBTQ+ rights. In this context, the actions of

8

Plaintiff's employer could be seen by a reasonable person as amplifying her sense of vulnerability and isolation. Title VII instructs that courts evaluate hostile environment claims based on what a reasonable person in the plaintiff's situation would feel; a Black, gay woman witnessing the national climate around her might reasonably experience Defendant's dismissive actions as more severe and demeaning, especially when Defendant cast the mere wearing of a mask to be a source of "harassment."

Thus, under the "totality of circumstances" approach, a reasonable juror could conclude that Defendant's conduct was sufficient to create a hostile work environment, and Plaintiff has at least presented a question of fact under Sixth Circuit precedent. Plaintiff urges the court to reconsider this claim and allow a jury to determine whether her experiences were hostile under Title VII.

### C. THERE IS A GENUINE ISSUE OF MATERIAL FACT AS TO PLAINTIFF'S RACE AND SEX DISCRIMINATION CLAIMS

*1. A "Prima Facie" Case With Particularized Factors Is Not Required to Overcome Summary Judgment.*

The Court dismissed Plaintiff's claim of race and sex discrimination by finding that Plaintiff failed to establish a prima facie case because she had not shown that she was treated differently from any similarly situated employees. However, this is not the requirement for establishment of discrimination, or even a prima facie case of discrimination. If it were, individuals would only be able to raise discrimination claims if they also have similarly situated colleagues of another race whom they can identify as being treated better than they are, even if Defendant's actions could otherwise be viewed as racially motivated. This is not required under Title VII.

9

As the U.S. Supreme Court held long ago, the precise requirements of a prima facie case can vary depending on context and were "never intended to be rigid, mechanized, or ritualistic." *Furnco Constr. Corp. v. Waters*, 438 U. S. 567, 577 (1978). Even in *McDonnell Douglas v. Green*, the Supreme Court stated that "the specification ... of the prima facie proof required…is not necessarily applicable in every respect to differing factual situations." 411 U.S. 792, 802, n. 13 (1972); *see also Teamsters v. United States*, 431 U. S. 324, 358 (1977) (noting that this Court "did not purport to create an inflexible formulation" for a prima facie case). As the Supreme Court stated:

> The prima facie case method established in *McDonnell Douglas* was 'never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination.' *Furnco, supra*, at 577. Where the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant. The district court has before it all the evidence it needs to decide whether 'the defendant intentionally discriminated against the plaintiff.' *Burdine, supra*, at 253.

*USPS Board of Governors v. Aikens*, 460 U.S. 711, 715 (1983). Accordingly, the Court should have reviewed Plaintiff's claims as whether Plaintiff presented evidence upon which a jury could infer that Defendant intentionally discriminated against Plaintiff. Utilizing this standard, there is no question that a reasonable juror could find that it did, in light of the fact that it suspended and then terminated Plaintiff for wearing a Black Lives Matter mask and a rainbow mask it believed to support LGBTQ rights.

2. *PLAINTIFF'S RACIAL DISCRIMINATION CLAIM SURVIVES AS A MATTER OF LAW*

The Court dismissed Plaintiff's race discrimination claims finding that plaintiff did not produce enough evidence to establish a genuine issue of material fact as to disparate treatment.

10

Plaintiff submits that the court's ruling misapplies the standard for similarly situated comparators, and the ruling fails to address the specific circumstances of Plaintiff's disparate treatment based on her display of protected affiliations, such as her support for Black Lives Matter and LGBTQ+ movements. Plaintiff argues that the court overlooked critical evidence and relevant case law that support a genuine issue of material fact regarding whether Plaintiff was treated less favorably than similarly situated employees, and that this constitutes reversible error.

First, Plaintiff did present evidence creating a genuine issue of material fact as to differential treatment. Plaintiff did, in fact, identify three employees who were noncompliant with the same dress code policy yet received more favorable treatment. Though these comparators were Black women, they did not display affiliation with protected class movements through their attire, as Plaintiff did with her Black Lives Matter and purported-LGBTQ+ masks. These masks represented protected characteristics, which placed Plaintiff in a distinct, protected category not shared by her coworkers, as her attire signified her support for civil rights movements.

The court focused on the racial identity of the comparators rather than on the discriminatory treatment experienced by Plaintiff due to her expression of support for marginalized groups. The Court's approach did not address key rulings that recognize that disparate treatment can stem from the display of protected class characteristics or affiliations, as demonstrated in *Connecticut v. Teal*, 457 U.S. 440, 455 (1982) (holding that Congress did not intend for employers to have "license to discriminate against some [members of a protected class] merely because he favorably treats other members of the employees' group"). In other words, Plaintiff's discrimination claim should not be negated simply because other Black

11

employees received different treatment; rather, it must be evaluated based on the totality of circumstances, including Plaintiff's display of protected characteristics.

Moreover, Sixth Circuit precedent in *Bobo v. United Parcel Service, Inc.*, 665 F.3d 741 (6th Cir. 2012), makes it clear that exact identity between a plaintiff and comparators is unnecessary. Rather, the Court should examine whether the plaintiff and her comparators engaged in similar conduct of comparable seriousness. Plaintiff's violation of the dress code policy was comparable to those of her colleagues, yet she alone faced scolding and termination due to her specific expression of support for Black Lives Matter and LGBTQ+ causes. By narrowly construing the comparator standard, the court's ruling allows employers to circumvent liability by creating pretextual reasons for disparate treatment, undermining protections under Title VII, as held in *Wright v. Murray Guard, Inc.*, 455 F.3d 702 (6th Cir. 2006). It is the seriousness and context of the conduct, not identical conduct, that matters.

In evaluating claims under the Elliott-Larsen Civil Rights Act (ELCRA), it is not just to require that Plaintiff's proposed similarly situated employees be exactly the same in every respect. This would only encourage Defendant to try to hide its discrimination by making sure a plaintiff was not exactly identical to their comparators.

When determining whether Plaintiff offered employees who were similarly situated to her, this Court should mimic the analysis found in *Ondricko v. MGM Grand Detroit, LLC*, No. 10-2133 (6th Cir. 2012), which stated:

> "The plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered 'similarly-situated.'" *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998); cf. *Meagher v. Wayne State Univ.*, 565 N.W.2d 401, 410 (Mich. 1997) ("While federal precedent interpreting the federal Civil Rights Act is not binding in Michigan, it is often used as guidance by

12

> Michigan courts."). Rather, the plaintiff and the employee with whom the plaintiff seeks to compare herself must be similar in "all relevant aspects." *Ercegovich*, 154 F.3d at 352. Further, a plaintiff's burden at the prima facie stage is "not onerous" and "poses 'a burden easily met.'" *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660 (6th Cir. 2000) (quoting *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *Wrenn v. Gould*, 808 F.2d 493, 500 (6th Cir. 1987)).

*Id*.

The narrow interpretation applied by the Court in this case resulted in the dismissal of her race discrimination claims without allowing them to proceed to a jury, as she deserved. The Court should consider *Holbrook v. Reno*, 196 F.3d 255, 261 (D.C. Cir. 1999), and other authority that demonstrates how overly restrictive interpretations of "similarly situated" hinder the enforcement of anti-discrimination protections. By recognizing that Plaintiff's affiliation with protected movements distinguished her case, a reasonable jury could indeed find that Plaintiff faced adverse treatment for expressing support for protected groups, creating a genuine issue for trial. For these reasons, Plaintiff respectfully requests that the Court grant reconsideration on her race discrimination claims.

3. **PLAINTIFFS SEX DISCRIMINATION CLAIM SURVIVES AS A MATTER OF LAW**

The Court dismissed Plaintiff's sex discrimination claim finding that without "actual proof" that defendant was aware of her proposed comparators violation, it is not enough to create a genuine issue of material fact as to disparate treatment. Plaintiff argues that the court's dismissal is inappropriate as it improperly weighs evidence and makes factual determinations that should be left to a jury. Plaintiff presented evidence of disparate treatment that supports a genuine issue of material fact regarding her termination, which warrants reconsideration and reversal of summary judgment.

13

The Court concluded that Plaintiff's testimony regarding a male coworker who wore a "veteran" hat daily was insufficient to establish that Defendant had knowledge of this violation and ignored it. However, the Court did not consider the unreasonableness of Defendant's claimed ignorance of this violation. Plaintiff testified that she worked alongside the gate agent from 2017 to 2020—a period spanning three years during which she observed him wearing the same hat each day, in clear violation of the dress code. Given the frequency and duration of the coworker's non-compliant attire, a reasonable juror could indeed find that Defendant was aware of the male employee's hat but chose not to discipline him. Furthermore, Plaintiff's own swift reprimand and discipline for her alleged dress code violation highlights an inconsistency in Defendant's enforcement, which directly supports Plaintiff's disparate treatment claim.

Plaintiff has established a prima facie case of sex discrimination. Under *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 523 (6th Cir. 2007), a plaintiff must show: (1) membership in a protected class; (2) an adverse employment action; (3) qualification for the position; and (4) that she was either replaced or treated differently than similarly situated employees. In this case, the first two elements are uncontested, and the court found a genuine question of material fact regarding Plaintiff's qualification, satisfying the third element. The only remaining issue is whether Plaintiff was treated differently from similarly situated male employees.

The evidence Plaintiff provided regarding her male coworker who routinely violated the dress code without repercussion is sufficient to meet this element. ELCRA requires only that similarly situated comparators exist who engaged in similar conduct; they do not need to be identical in every respect. By disregarding Plaintiff's evidence that a male coworker repeatedly wore a prohibited hat and was not disciplined, the court improperly engaged in fact-finding, a role reserved for the jury. Additionally, Defendant's swift action against Plaintiff in contrast with

14

its tolerance of her male colleague's violations highlights a differential enforcement standard that supports her sex discrimination claim under ELCRA.

Plaintiff respectfully requests that the court reconsider its ruling, as genuine issues of material fact exist that preclude summary judgment.

## D. THERE IS A GENUINE ISSUE OF MATERIAL FACT AS TO PLAINTIFF'S RETALIATION CLAIMS AND THEREFORE SHOULD BE LEFT FOR A JURY TO DECIDE

Plaintiff's retaliation claim should not have been dismissed, as the Court's decision overlooked the scope of Title VII's protection of opposition to perceived discrimination. Plaintiff engaged in protected activities by expressing opposition to what she believed to be discriminatory practices, including wearing masks symbolizing support for LGBTQ and Black Lives Matter communities—conduct that reasonably relates to protected characteristics under Title VII, specifically sex/gender and race. Moreover, her letter on August 22, 2020, explicitly articulated her belief that she was experiencing workplace discrimination. **(Exhibit A).** This opposition constitutes protected activity under Title VII's opposition clause.

Title VII prohibits retaliation for opposing practices deemed unlawful under the statute. The opposition clause explicitly protects a range of activities, from filing formal complaints to raising informal concerns to management. In *Laster v. City of Kalamazoo*, 746 F.3d 714, 729-30 (6th Cir. 2014), the Sixth Circuit underscored that Title VII protects not only formal EEOC complaints but also informal objections to potential discriminatory practices, such as Plaintiff's letter to management and her visible support for social movements associated with protected characteristics. Additionally, the Supreme Court has interpreted the opposition clause broadly,

15

encompassing actions where an employee communicates a belief of discrimination to the employer. In *Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271, 276-78 (2009), the Court held that expressing resistance or opposition to perceived discrimination is a protected act, and reasonable jurors could view Plaintiff's actions as antagonistic to what she perceived as unlawful practices.

To establish a prima facie case of retaliation under Title VII, Plaintiff must show: (1) she engaged in protected activity; (2) Defendant knew of this activity; (3) she suffered a materially adverse employment action; and (4) a causal connection between the protected activity and the adverse action, see *Laster*, 746 F.3d at 730. Here, Plaintiff satisfies all four elements. She engaged in protected activity by objecting to perceived discrimination through wearing masks in support of LGBTQ and Black Lives Matter causes and submitting a written complaint. Defendant knew of this activity, as demonstrated by its rapid response to her mask-wearing and the subsequent investigation following her letter. Shortly thereafter, Plaintiff experienced a materially adverse employment action—termination—on August 31, 2020, only five days after sending in her complaint and approximately two weeks following the mask incidents. This close temporal proximity serves as circumstantial evidence of causation, as the Sixth Circuit recognizes that timing alone can establish causation if the events are sufficiently close in time, *Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 505 (6th Cir. 2014).

Defendant argues that Plaintiff's conduct did not constitute protected activity because the discrimination she alleged was not unlawful under Title VII. However, Plaintiff had a good faith belief that the acts she opposed were discriminatory, and such a belief is sufficient under Title VII's opposition clause. As in *Velazquez-Ortiz v. Vilsack*, 657 F.3d 64, 72 (1st Cir. 2011), Title VII's protection extends to actions by employees who, in good faith, oppose practices they

16

believe to be discriminatory, even if those practices are ultimately found lawful. The critical inquiry is not the validity of Plaintiff's belief but rather her reasonable perception that discrimination was occurring and her resulting opposition to it.

In light of these factors, Plaintiff has established a prima facie case of retaliation. By dismissing this claim, the Court improperly disregarded Plaintiff's protected opposition activities and the temporal proximity between her complaint and termination, which should be resolved by a jury. Plaintiff respectfully requests the court to reconsider its ruling and reinstate her retaliation claim under Title VII.

### E. PLAINTIFF HAS ESTABLISHED PRETEXT

While the Court did not address the issue of pretext, Plaintiff finds it necessary to briefly address this matter due to the establishment of a prima facie case over her claims. Once a plaintiff establishes a prima facie case, the burden shifts to the Defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. While Defendant has provided such a reason, the burden then shifts back to Plaintiff to demonstrate that this stated basis for the adverse employment action is a pretext designed to mask discrimination.

As articulated in *Texas Dept. Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981), and *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 805 (1973), a plaintiff can establish pretext by producing evidence sufficient for a jury to reasonably reject the defendant's explanation and infer that the defendant intentionally discriminated against the plaintiff. According to *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000), a plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct.

17

Defendant's pretextual reason for its adverse employment actions on Plaintiff are because of "violation of company policy", specifically, the uniform policy and the social media policy. Plaintiff has provided facts stating that 1) masks were not apart of the uniform policy, 2) other employees violated the uniform, and 3) there is no evidence Plaintiff posted a threat on social media. These facts show that Defendant's reasons for terminating her are at the very least pretextual and create a genuine issue of material fact that the jury should be able to hear.

It is important to recognize that, according to the Supreme Court's guidance in *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000), the Court should not engage in weighing the defendant's legitimate reasons against the plaintiff's evidence of pretext. Instead, this determination is fundamentally a question of fact for the jury to resolve. The jury is uniquely positioned to assess the credibility of the parties involved and to make a determination as to whether Defendant's actions were driven by discrimination. Thus, the question of whether Defendant's reasons are pretextual should be reserved for the jury's consideration.

## CONCLUSION

WHEREFORE, Plaintiff humbly asks this Court to grant Plaintiff's motion for reconsideration, for the reasons stated herein.

Dated: October 25, 2024

                                                  Respectfully Submitted,

                                                  */s/ Rejanae M. Thurman*
                                                  Rejanae M. Thurman, (P85701)
                                                  Carla D. Aikens, P.L.C.
                                                  *Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing instrument was served upon all parties to the above cause to each of the attorneys of record herein at their respective addresses as directed on the pleadings on October 25, 2024, by:

                                                  /s/ *Rejanae M. Thurman*