UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAMRA CULTON,

       Plaintiff,

v.

UNIFI AVIATION, LLC,

       Defendant.
_____/

Case No. 2:22-cv-12102

Honorable Susan K. DeClercq
United States District Judge

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO RECONSIDER (ECF No. 58) AND MOTION FOR REVIEW OF THE CLERK'S TAXATION (ECF No. 60)

In 2022, Tamra Culton sued her former employer, Unifi Aviation, for creating a hostile work environment, discriminating against her because of her race and sex, and retaliating against her, all in violation of Title VII and Michigan's Elliot-Larsen Civil Rights Act. ECF No. 1. Culton claimed that she was fired from her position as a Delta gate agent because she wore a rainbow-striped face mask and a "Black Lives Matter" face mask at work. ECF No. 12. On January 23, 2024, Unifi moved for summary judgment. ECF No. 42.

On September 27, 2024, this Court granted that motion and dismissed Culton's Amended Complaint with prejudice. ECF No. 55. On October 24, 2024, the Clerk of Court filed a Taxed Bill of Cost, which taxed an amount of $4,374.85 against Culton, attributable to court-reporter fees. ECF No. 57. Culton now seeks

reconsideration of this Court's September 27 Opinion and Order and review of the Clerk's taxation. ECF Nos. 58; 60. But Culton's motion to reconsider merely reiterates the arguments she made at summary judgment and does not demonstrate any clear error of law. Similarly, her motion to review the clerk's taxation does not state a cognizable basis for relief. Thus, as explained below, both motions will be denied.

## I. MOTION TO RECONSIDER

### A. Standard of Review

A motion to reconsider "is not an opportunity to re-argue a case." *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998) (citing *FDIC v. World Univ. Inc.*, 978 F.2d 10, 16 (1st Cir. 1992)). Rather, a trial court may grant reconsideration under Civil Rule 59(e) if there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice. *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999). "Clear error" requires a "definite and firm conviction that a mistake has been committed." *United States v. Castano*, 906 F.3d 458, 467 (6th Cir. 2018) (quoting *Easley v. Cromartie*, 532 U.S. 234, 242 (2001)). "Newly discovered evidence" is that which was previously unavailable. *GenCorp*, 178 F.3d at 834. Accordingly, "a district court does not abuse its discretion in denying a Rule 59 motion when it is premised on evidence that the party had in its control prior to the original entry of

judgment." *Hayes v. Norfolk S. Corp.*, 25 F. App'x 308, 315 (6th Cir. 2001) (quoting *Emmons v. McLaughlin*, 874 F.2d 351, 358 (6th Cir. 1989)).

### B. Analysis

*1. Hostile-Work-Environment Claim*

Culton argues that this Court should reconsider its dismissal of her hostile-work-environment claim because this Court "erred . . . by failing to consider the totality of the circumstances and the impact of Defendant's conduct from the perspective of a reasonable person in her position." ECF No. 58 at PageID.1118. Specifically, she argues for the first time that the totality of the circumstances should have included "the heightened social tensions of 2020" and the impact of Unifi's actions "on her identity as a Black, gay woman." *Id.* at PageID.1119. This Court takes this argument to be one alleging clear error.

However, even the Court were now to consider "the social tensions of 2020" and the impact of these events on Culton's identity, this would not change the fact that Culton's hostile-work-environment claim is *procedurally barred*. ECF No. 54 at PageID.1073–74. True, this Court noted—as an alternative holding—that the evidence did not support Culton's claim of an objectively intolerable workplace. *Id.* But Culton does not present any new evidence on the issue of her failure to include a hostile work environment claim in her EEOC charge. *See generally* ECF No. 58. Thus, the motion will be denied as to her hostile-work-environment claim.

## 2. Race Discrimination Under Title VII

Culton next challenges this Court's holding that she failed to establish a prima facie case of race discrimination because she did not show she was treated differently than any similarly situated employees of another race. ECF No. 58 at PageID.1120. This Court again construes her argument as one for clear error.

Culton argues that this Court erred by applying the *McDonnell Douglas* burden-shifting framework too rigidly, highlighting that "[t]he *prima facie* case method established in *McDonnell Douglas* was 'never intended to be rigid, mechanized, or ritualistic.'" *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983) (quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978). True, the *McDonnell Douglas* framework should not be rigidly applied where, as in *Aikens*, "[t]he district court has before it all the evidence it needs to decide whether 'the defendant intentionally discriminated against the plaintiff.'" *Id.* (quoting *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). Nor is the framework necessary where there is *direct* evidence of discriminatory intent. *See Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 703 (6th Cir. 2007); *see also Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir. 1998).

Here, however, there is no direct evidence of discrimination, and the Court did not have "all the evidence it need[ed]," *Aikens*, 460 U.S. at 715, so the evidence presented was properly evaluated under the indirect-evidence framework. Despite

- 4 -

offering no proof that she was treated differently from anyone of another race, Culton argues that on the facts presented, "a reasonable juror could find that [Unifi intentionally discriminated against Culton], in light of the fact that it suspended and then terminated Plaintiff for wearing a Black Lives Matter mask." ECF No. 58 at PageID.1121. She further argues that this Court erred in comparing Culton to other black women, because "*the masks* represented protected characteristics, which placed Plaintiff in a distinct, protected category not shared by her coworkers." *Id.* at PageID.1122 (emphasis added). Thus, she is essentially arguing that she was fired because of the words on her *mask*, not because of her *race*, which does not lend itself to the conclusion that Unifi racially discriminated against her.

But even if wearing a "Black Lives Matter" mask *was* enough to make out a prima facie case, Unifi provided a legitimate, nondiscriminatory reason for the adverse employment action: Culton violated the uniform and social media policies. ECF No. 42-17 at PageID.694. So, the burden shifted to Culton to show that the nondiscriminatory reason was pretextual "in one of three ways: (1) by showing that the employer's articulated reason had no basis in fact; (2) by showing that the reason would have been insufficient to motivate the employer's action; or (3) by showing that the reason did not actually motivate that action." *Blount v. Stanley Engineering Fastening*, 55 F.4th 504, 510 (6th Cir. 2022) (quoting *Turner v. Marathon Petroleum Co.*, 804 F. App'x 375, 378 (6th Cir. 2020)).

Culton failed, however, to demonstrate a genuine issue of fact that her firing was pretextual. Culton's claims that she "provided facts stating that 1) masks were not a part of the uniform policy, 2) other employees violated the uniform [policy], and 3) there is no evidence Plaintiff posted a threat on social media," ECF No. 58 at PageID.1129; ECF No. 48, are either unsupported by the evidence or do not support a finding of pretext.

*First*, Culton claims that masks were not a part of the uniform policy, but the evidence showed otherwise. It is undisputed that while *Unifi* did not explicitly have a mask policy, Unifi employees were required to follow the contracted airline's uniform policy. ECF No. 42-4 at PageID.648. It is further undisputed that *Delta*, Culton's contract airline, implemented a mask requirement "for uniformed employees" which mandated that "employees must wear a Delta-provided disposable or solid black mask or a plain, all-black cloth face covering." ECF No. 42-5 at PageID.653. As such, Culton failed to provide evidence in support of her claim that her firing was pretextual because masks were not part of the uniform policy.

*Second*, she argues that the evidence of other employees violating the uniform policy supports a finding of pretext. However, such evidence was already evaluated under the disparate treatment prong of the prima facie case. The existence of other uniform violators is not evidence that: (1) the employer's articulated reason had no

- 6 -

basis in fact; (2) the reason would have been insufficient to motivate the employer's action; or (3) the reason did not actually motivate that action. *Blount*, 55 F.4th at 510. As such, this evidence too does not create a genuine question of fact as to pretext.

*Finally*, Culton argues that the firing was pretextual because "there is no evidence Plaintiff posted a threat on social media." ECF No. 58 at PageID.1129. In support, Culton points to evidence that she denied making the threat. ECF No. 48 at PageID.784. But regardless of whether Culton *did* post a threat on social media, there is certainly undisputed evidence in the record that decisionmakers *believed* that she did. *See, e.g.*, ECF Nos. 49-3 at PageID.939, 942, 944–45 (Cassandra Donald Dep.); 49-5 at PageID.976, 978 (Amy Langley Dep.); 49-6 at PageID.998 (Tammy Michelle Smith-DeJesus Dep). And the Sixth Circuit has held that as long as an employer honestly believes in its proffered nondiscriminatory reason for firing an employee, the employee cannot establish that the reason was pretextual just because it was ultimately incorrect. *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001). Culton fails to point to any evidence that Unifi did *not believe* she had sent a threatening text, so this evidence also falls short of showing pretext.

Absent any evidence, direct or indirect, that she was fired *because of* her race and that any alternative reason was mere pretext, Culton's claim must be dismissed.

Finding no clear error, the motion to reconsider the dismissal of her Title VII race-discrimination claim will be denied.

### 3. Race Discrimination Under ELCRA

Culton next challenges the dismissal of her race-discrimination claim under ELCRA. Courts analyze ELCRA discrimination claims under the same framework as Title VII claims. *Wingo v. Mich. Bell Tel. Co.*, 815 F. App'x 43, 47–48 (6th Cir. 2020). For the same reasons that Culton failed to identify any clear error in this Court's holding as to the Title VII claim, she fails to identify any clear error—or any other basis for reconsideration—as to the ECLRA race-discrimination claim. *See* discussion *supra*, Part II.B. Accordingly, the motion to reconsider the dismissal of her ELCRA race-discrimination claim will be denied.

### 4. Sex Discrimination Under ELCRA

Culton also challenges the dismissal of her sex-discrimination claim under ELCRA. Like claims under Title VII, ELCRA sex discrimination claims also require plaintiffs to establish a prima facie case. *Wingo*, 815 F. App'x at 47. Therefore, the same analysis as to Culton's race-discrimination claims applies here. Culton's argument for reconsideration of this Count, however, rests not on the inapplicability of *McDonnell Douglas* but on this Court's "inappropriate" evaluation of the evidence of disparate treatment.

In establishing disparate treatment, Culton pointed to a total of four coworkers whom she remembers violating the uniform policy. Of those four, she identifies only one as male, claiming that he wore a "veteran hat" in violation of the policy. ECF No. 58 at PageID.1125. Seemingly acknowledging that evidence of the three women (not similarly situated persons of a *different* sex) does not satisfy the *McDonnell Douglas* disparate treatment prong, Culton argues that her sex discrimination claim still should have gone to a jury based on the male coworker because of the below testimony from her own deposition:

> Q: Can you think of examples of someone wearing a hat and getting away with it that didn't fit with the policy?
> A: Yes.
> Q: Tell me about that, please?
> A: It's a man, he would have a veteran's hat on daily.
> Q: He was a gate agent?
> A: Correct.
> Q: What was his name?
> A: I don't remember.
> Q: What years did he work with you?
> A: Quite a few. At least 2017 until 2020, I believe.
> Q: What color was the hat?
> A: Blue.
> Q: Was it navy blue?
> A: I believe so.
> Q: And you don't remember his name even though he worked with you for about three years?
> A: I didn't talk to a lot of people.
> Q: So it's a no?
> A: Correct.
> Q: And you said he had it on daily. So every day he worked with you he wore that hat?
> A: Correct.
> Q: And was he a veteran?

> A: Yes.
> Q: Do you know what branch of the military he had served in?
> A: I think it said veteran, so I think Vietnam, I think.
> Q: So the hat was referring to his specific service in the military?
> A: I'm assuming.
> Q: Did you ever ask the supervisor why he was allowed to wear that hat?
> A: No.
> Q: So he wore that hat while working at the gate –
> A: Correct
> Q: – interacting with passengers?
> A: Correct.
> Q: And did you ever hear a supervisor or manager approve him to wear that hat?
> A: No.
> Q: Did you ever see a supervisor or manager acknowledge that he was wearing the hat and conclude that it was okay?
> A: They saw him every day, so I guess it was okay.

ECF No. 49-1 at PageID.813–14. According to Culton, the Court could not weigh this evidence—even to consider whether it created a genuine issue of material fact as to a prima facie case of sex discrimination. ECF No. 58 at PageID.1124. However, she fails to recognize that "a genuine issue for trial" requires more than a mere "scintilla of evidence." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51 (1986). In order to determine whether there is a genuine issue for trial, courts must evaluate whether the evidence presented meets such a bar.

Here, Culton's evidence of disparate treatment fails to raise a genuine issue of fact. Specifically, Culton's deposition fails to: (1) identify the alleged uniform violator by name; (2) identify the alleged uniform violator as a Unifi employee; (3) state whether the alleged uniform-violator received special permission to wear the

hat; (4) state whether the alleged uniform violator was ever punished for wearing the hat; (5) state that she ever spoke with supervisors about the hat or heard them acknowledge it in any way. *See* ECF No. 49-1. Further, *none* of the deposed Unifi supervisors were ever asked about this alleged uniform-violator. *See* ECF Nos. 49-2 (Robyn Banks Dep.); 49-3 (Cassandra Donald Dep.); 49-4 (Robin Cauchi Dep.); 49-5 (Amy Langley Dep.). And in the months between Culton's deposition on December 15, 2023, and her response to the motion for summary judgment filed on February 27, 2024, she failed to uncover and present *any* additional evidence about this mystery employee.

A showing of evidence creating a genuine issue of fact is particularly necessary in discrimination cases. This is because under the *McDonnell Douglas* framework, establishing a prima facie case creates a presumption of discrimination only overcome by evidence that the disparate treatment was for a nondiscriminatory purpose. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–07 (1993) (first quoting 1 D. Louisell & C. Mueller, Federal Evidence § 67, p. 536 (1977); and then quoting *Burdine*, 450 U.S. at 254). Put simply, it would be unreasonable for this Court to find that, based solely on this deposition testimony, Unifi *presumably* discriminated against Culton because of her sex. This is underscored by the fact that on such vague and unspecific allegations—when there is no evidence that Unifi even employed such a man, let alone was aware of any uniform violations by him—there is no way

that Unifi could reasonably be expected to produce evidence justifying its alleged refusal to punish him.

Accordingly, Culton's deposition fails to create a genuine issue of material fact that she was treated differently by Unifi from a similarly situated man. Finding no clear error, the motion to reconsider will be denied as to the sex discrimination claim.

### 5. Retaliation Under Title VII

Finally, this Court granted summary judgment on Culton's retaliation claim because she failed to provide any evidence that she was engaged in protected activity under Title VII. ECF No. 54 at PageID.1086. In her motion to reconsider, Culton first reiterates her assertion that "wearing masks symbolizing support for LGBTQ and Black Lives Matter communities" is a protected activity under Title VII. Not only is this assertion unsupported by law, *see* ECF No. 54 at PageID.1085, but it merely restates an argument already made and considered at the summary judgment stage, ECF No. 48 at PageID.793, so this Court will not reconsider its order on this basis. *Sault Ste. Marie Tribe of Chippewa Indians v. Engler,* 146 F.3d 367, 374 (6th Cir. 1998).

Notably, Culton *does* provide—for the first time—evidence in her motion to reconsider that she engaged in a protected activity before she was terminated from Unifi. ECF No. 59. Specifically, she produced a letter dated August 22, 2020 (one

week before she was fired), in which she claimed she was "discriminated against based on sexual orientation and race." *Id.* at PageID.1132. Had she submitted this evidence at the summary judgment stage, perhaps it might have been enough to create a genuine issue of material fact that she engaged in protected activity. *See Johnson v. Genesee Cnty. Rd. Comm'n.*, 999 F.3d 333, 343–44 (6th Cir. 2021). For whatever reason, however, she chose not to do so.

A motion to reconsider is not an opportunity to raise evidence that could have been raised at the time of the initial motion for summary judgment. Here, Culton received the letter in discovery and could have produced it at the summary judgment stage, ECF No. 61-2, so it is not "newly discovered" evidence under Rule 59. *GenCorp*, 178 F.3d at 834.

For these reasons, the motion to reconsider the dismissal of Culton's retaliation claim will be denied.

## II. MOTION FOR REVIEW OF CLERK'S TAXATION

Culton also filed a motion to review the Clerk's taxation of $4,374.85 against her. ECF No. 60. Under Civil Rule 54, there is a "presumption in favor of awarding costs," but the trial court may deny costs. *White & White Inc. v. Am. Hosp. Supply Corp.*, 786 F.2d 728, 730 (6th Cir. 1986). "[I]t is incumbent upon the unsuccessful party to show circumstances sufficient to overcome the presumption." *Id.* at 732 (quoting *Lichter Found., Inc. v. Welch*, 269 F.3d 142, 146 (6th Cir. 1959)). The Sixth

Circuit has identified several factors that may be sufficient to overcome the presumption, including "the losing party's good faith, the difficulty or the case, the winning party's behavior, and the necessity of the costs. *Singleton v. Smith*, 241 F.3d 534, 539 (6th Cir. 2001) (citing *White*, 786 F.2d at 732–33). Ability of the winning party to pay his own costs is irrelevant, *id.*, but courts may consider the indigency of the losing party. *Jones v. Continental Corp.*, 789 F.2d 1225, 1233 (6th Cir. 1986).

Here, Culton only raises two arguments as to why she should not be required to pay the taxed costs. Both arguments fail, so the motion will be denied.

First, she argues, "[i]t would be inherently prejudicial and unfair to burden [her] with the additional financial responsibility of Defendant's costs on top of the significant expenses already borne." ECF No. 60 at PageID.1136. But she fails to provide any evidence of: (1) her own costs; (2) her inability to pay her own costs; or (3) her inability to pay Unifi's costs as taxed. *See* ECF No. 60. Therefore, the argument that Unifi's costs are overly burdensome for her does not overcome the presumption of awarding costs.

Second, Culton claims that "imposing such costs could have a chilling effect on future litigants." ECF No. 60 at PageID.1136. However, "[t]he Sixth Circuit has expressly rejected this argument and held that awarding taxable costs to a defendant in a civil rights action would not have a chilling effect on potential litigants." *Moore*

*v. Nw. Airlines*, No. 04-cv-70560, 2005 WL 1348635 (E.D. Mich. Apr. 22, 2005) (citing *Singleton*, 241 F.3d at 538–89). This Court will not deny costs on this basis.

Because Culton fails to show circumstances sufficient to overcome the presumption of awarding costs, *White*, 786 F.2d at 732, her motion for review of the clerk's taxation will be denied.

### III. CONCLUSION

Accordingly, it is **ORDERED** that Plaintiff's Motion to Reconsider, ECF No. 58, is **DENIED**.

It is further **ORDERED** that Plaintiff's Motion for Review of the Clerk's Taxation, ECF No. 60, is **DENIED**.

*/s/Susan K. DeClercq*
SUSAN K. DeCLERCQ
United States District Judge

Dated: January 24, 2025